# Exhibit H

# Fairfield Sentry Limited
# Fairfield Sigma Limited
# Fairfield Lambda Limited
# (All In Liquidation)

## Third Interim Consolidated Report of the Liquidators

**30 September 2010**

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

## Table of Contents

|     |                                    | Page   |
| --- | ---------------------------------- | ------ |
| 1.  | Introduction                       | 3      |
| 2.  | Executive Summary                  | 7-8    |
| 3.  | Analysis and Work Performed to Date| 9-18   |
| 4.  | Financial Analysis                 | 18-20  |
| 5.  | Conclusion                         | 20-21  |

Appendix A: Cash Receipts and Disbursements Summary

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

---

# 1        Introduction

1.1        This Report provides an update regarding the current position of three related companies, Fairfield Sentry Limited ("Sentry") and two of its feeder funds, Fairfield Sigma Limited ("Sigma") and Fairfield Lambda Limited ("Lambda").

1.2        <u>Basis of Appointment</u>

1.2.1        On 23 April 2009, Mr. Christopher Stride, then Managing Director of Krys & Associates (BVI) Limited was appointed Liquidator of Lambda pursuant to the provisions of the British Virgin Islands Insolvency Act 2003 ("the Act").

1.2.2        On 21 July 2009, Messrs. Christopher Stride and Kenneth Krys, Managing Director of Krys & Associates Cayman Limited were jointly appointed Liquidators of Sentry and Sigma pursuant to the provisions of the Act.

1.2.3        Effective 8 September 2010 Mr. Christopher Stride resigned as Liquidator on the three funds; Ms. Joanna Lau, Managing Director of Krys & Associates (BVI) Limited, was jointly appointed liquidator of Sentry and Sigma with Mr. Krys; Ms Lau and Mr. Krys were jointly appointed liquidators of Lambda.  The appointments were made in accordance with the resolutions passed by meetings of the Companies' creditors held on 6 September 2010.

1.2.4        Save where otherwise appears, references in this report to "the Companies" are to Sentry, Sigma and Lambda collectively and references to "the Liquidators" are to both Mr. Krys and Ms. Lau in their joint capacities as Liquidators of the Companies.

1.2.5        Each of the Companies was placed into liquidation in separate proceedings: Claim No. 2009/0074 in the case of Lambda, Claim No. 2009/0136 in the case of Sentry and Claim No.2009/0139 in the case of Sigma.

---

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

1.2.6    However, given the similarities between the Companies and their collective history, the Liquidators have determined that a single consolidated Report is appropriate.   Where the contents of this Report relate to one specific entity, this is stated.   No issue has so far arisen that requires the Liquidators to contemplate a separate strategy in relation to one company which is inconsistent with any interest of either of the other companies.

1.2.7    This report should be read in conjunction with the First Interim Report dated 16 September 2009 (the "First Interim Report") and the Second Interim Report dated 29 March 2010 (the "Second Interim Report").

1.2      Duty to Report

1.2.1    The Liquidators are not obligated, either under the provisions of the Act or the Insolvency Rules 2005 (the "Rules") or under any of the Orders pursuant to which they were appointed to provide a report on their acts and dealings and the conduct of the liquidation until the conclusion of the liquidations.   Given the size and scope of the liquidations, however, the Liquidators wish to keep the creditors and the registered shareholders regularly apprised of the current status of the liquidations, and therefore expect to continue to provide Reports biannually.

1.3      Restrictions and Qualifications of the Report

1.3.1    The purpose of this Report is to provide an update to the Court, creditors and investors on the work performed by the Liquidators since the Second Interim Report.

1.3.2    In performing their work, the Liquidators have relied upon the integrity and accuracy of the information and documents supplied.   Although the Liquidators have attempted to corroborate the information and documents they have obtained from different sources, they have not independently verified all of the information and documentation they have relied upon in preparing this Report.   In

**PRIVILEGED AND CONFIDENTIAL**

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

---

addition, the Liquidators have not performed an audit or review in accordance with International

Audit Standards and, consequently, no assurance is expressed in this regard.

1.4     The Liquidators report solely on the information available to them at the time of this Report and

they will update the creditors and shareholders in future reports, as new or additional information

comes to light.  The Liquidators have no duty to update information at any particular time and no

duty to correct any misstatements, inaccuracies or omissions upon discovery of the same or at any

time.Sources of Financial Data and Information

1.4.1   The Liquidators and their staff have not had access to all of the documents and information of the

Companies and therefore have continued to face difficulties in conducting a proper investigation

into the affairs of the Companies.  To the extent the Liquidators have been able to conduct

investigations and reach conclusions, they have had to rely upon the information and

documentation obtained from the following sources in the preparation of this Report:

- The Companies' Administrator, Custodian, and Depository, respectively Citco Fund Services Europe B.V., Citco Bank Nederland B.V. and  Citco Global Custody N.V. (together referred to as "Citco");

- The Companies' former attorneys, Conyers Dill & Pearman (BVI), Mr. Andrew Goldstein (USA), Seward & Kissel LLP (USA), Stikeman Elliott LLP (Canada) and Loyens & Loeff N.V. (The Netherlands);

- Two of the Companies' directors, Messrs. Jan Naess and Peter Schmid (the "Independent Directors");

- The Companies' Registered Agent, Codan Trustees (B.V.I.) Limited;

- The BVI Financial Services Commission, Registry of Corporate Affairs

1.4.2   At the date of this report, the Liquidators have had access to only limited documentation from a

number of sources, including the Companies' former Investment Manager, Fairfield Greenwich

---

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

(Bermuda) Limited.    Furthermore, the Liquidators have received information from PriceWaterhouseCoopers on a confidential basis.

1.4.3    The Liquidators have also been advised by their attorneys in the British Virgin Islands (Forbes Hare), USA (Brown Rudnick LLP), Ireland (Gallenalliance Solicitors) and the Netherlands (Brada Kuttner) and by English counsel, Mr. Gabriel Moss QC.

1.5    Scope of Work Performed

1.5.1    The powers of the Liquidators are in accordance with the provisions of Schedule 2 of the Act and these are set out in the Order dated 23 April 2009 (Lambda) and the Orders dated 21 July 2009 (Sentry and Sigma).  The Act and the Rules are available to download from the British Virgin Islands Financial Services Commission website: www.bvifsc.vg .

1.6    Performance of Duties

1.6.1    In order to comply with their duties and obligations, the Liquidators have been assisted by personnel of Krys & Associates (BVI) Limited and, at times, Krys & Associates Cayman Limited, whose work has been performed under the direction of the Liquidators.

1.7    Currency

1.7.1    All references to $ in this report refer to the US dollar unless otherwise specified.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

---

## 2      Executive Summary

2.1      Since the previous reports, the Liquidators have directed their efforts to a formal litigation strategy that is pursued with a view to maximizing recoveries to creditors and investors.  A key feature of the litigation strategy was to obtain recognition in the United States under Chapter 15 of the US Bankruptcy Code in order to provide the Liquidators with access to and use of certain of the rights, powers and remedies available under the US Bankruptcy Code including the stay of certain U.S. proceedings, rights to protect the Companies' property in the US and the right to seek discovery in connection with the property and assets of the Companies.

2.2      On 22 July 2010 the Liquidators successfully obtained recognition of the British Virgin Islands proceedings under Chapter 15 of the U.S. Bankruptcy Code .  The hearing was contested by Morning Mist Holding Limited and Miguel Lomeli, plaintiffs in a putative derivative action brought in the name of Fairfield Sentry.  Ruling from the bench, and thereafter issuing a memorandum order, United States Bankruptcy Judge Burton R. Lifland granted "foreign main recognition" to the Funds' British Virgin Islands based insolvency proceedings under section 1517(b)(1) of the Bankruptcy Code. As part of the relief granted, a lawsuit brought derivatively on behalf of Fairfield Sentry Limited by purported shareholders in Fairfield Sentry Limited was stayed.  The matter is currently being appealed.  Briefing on the appeal is expected to conclude by November 2010.

2.2      The other elements of the litigation strategy are:

- Pursuing claims for the restitution of redemption proceeds paid to investors, including fictitious profits.  The Liquidators have now issued and served 167 claims to recover fictitious profits in the BVI (9 further claims brought against one defendant have been discontinued as a result of a tolling agreement entered into to enable settlement discussions to be progressed) and 121 claims to clawback redemptions, including

---

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

fictitious profits redemptions, in the US (54 further claims have been filed and have subsequently been discontinued without prejudice) against redeemers.

- Entering into tolling agreements with PriceWaterhouseCoopers and pursuing settlement discussions with them.

- Entering into tolling agreements with Citco and the independent directors whilst continuing to seek and obtain their assistance.

- Maintaining the status quo with regard to the FGG litigation whilst enquiries continue.

2.3    In additional to progression of their litigation strategy, the Liquidators have been continuing their discussions with the US Trustee appointed over Bernard L. Madoff Investments Securities LLC ("BLMIS") pursuant to the Securities Investor Protection Act, Mr. Irving Picard (the "SIPA Trustee").

2.4    The SIPA Trustee supported the Chapter 15 application. Otherwise, although discussions are continuing, during the time period between this report and the last report, material advancement on an overall settlement was not significantly progressed. The Liquidators are advised that this is because the SIPA Trustee has been busy on other asset recovery matters which needed to be attended to or resolved first.

2.5    The Liquidators are currently exploring the possibility of selling Sentry's SIPA claim and have been approached by a number of parties interested in purchasing this claim.

2.6    The Liquidators have taken steps to seek recognition of their appointment in the Republic of Ireland and to have the frozen funds released and paid over to the estate. This is being done in conjunction with the defense of substantive claims in the Netherlands.

2.7    Lastly, pursuant to a protocol agreement dated 14 July 2010 the Liquidators have kept the ad hoc Liquidation Committee of Sentry apprised of their strategy and the progression of the liquidation, by way of monthly telephone meetings and quarterly in-person meetings.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

## 3     Analysis and Work Performed to Date

3.1     Since the Second Interim Report, the primary activities of the Liquidators has focused on the following activities:

i     Obtaining recognition of the British Virgin Islands Liquidation proceedings under Chapter 15 of the U.S. Bankruptcy Code; and defending the appeal of such recognition;

ii     Issuing and serving of restitutionary claims in the US and BVI; and retaining and instructing counsel in foreign jurisdictions regarding the bringing of restitutionary claims in those jurisdictions;

iii     Entering into tolling agreements with PriceWaterhouseCoopers to enable progression of settlement discussions;

iv     Entering into tolling agreements with Citco and independent directors to facilitate information sharing and the Liquidators' ongoing investigation into the Companies' affairs;

v     Pursuing rights, remedies and powers available under Chapter 15;

vi     Ongoing negotiations and discussions with the SIPA Trustee regarding a potential global settlement of his preference and other claims against the Funds;

vii     Considering the possible sale of Sentry's SIPA claim and discussions with several interested parties;

viii     Seeking recognition in the Republic of Ireland of the Liquidators' appointment in respect of Sentry; Determining appropriate course of action to safeguard assets frozen by the foreign Courts following action taken by the two registered shareholders in the Netherlands ("the Dutch attachments");

ix     Seeking sanction from the BVI Court where necessary and keeping the Court and (in the case of Sentry only) the ad hoc Liquidation Committee regularly apprised of the administration of the Liquidation(s).

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

3.2   Seeking Recognition of the BVI Liquidation Proceedings Under the U.S. Bankruptcy Code

3.2.1   Since the outset of the liquidation, the Liquidators have recognized that obtaining Chapter 15 recognition afforded them certain powers, remedies and rights that may assist in the realisation of assets.

3.2.2   The litigation strategy became more focused earlier this year, when the Liquidators were in the position of having sought and obtained extensive legal advice from their US counsel and were therefore properly able to determine that the benefits afforded under the auspices of Chapter 15 could indeed be utilized in these matters.

3.2.3   The Liquidators approached the SIPA Trustee and set out their intention to him to pursue Chapter 15 recognition.  The SIPA Trustee agreed to not interfere or object to the Liquidators' petition and provided them with a written agreement to this effect.

3.2.4   On 22 July 2010 the matter was heard in the US Bankruptcy Court for the Southern District of New York.   The application was contested by Morning Mist Holding Limited and Miguel Lomeli (collectively the "Objectors"), plaintiffs in a putative derivative action and purported investors in Sentry.  The main point of legal contention between the Liquidators and the Objectors was whether the Funds' Centre of Main Interest is in the BVI.

3.2.5   The US Bankruptcy Court found that the BVI liquidation of each of the Funds was a foreign main proceedings as defined under the Bankruptcy Code and granted certain relief.  The Objectors have filed an appeal and it is anticipated that briefing on the appeal will conclude by November 2010, with a decision to follow.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

3.3         Issuance of Restitutionary Claims in the BVI and US

3.3.1       Given the vast deficit as regards Registered Shareholders, the Liquidators have explored various options to recover funds.

3.3.2       As previously reported, legal advice received indicated that the Liquidators had bases for claw-back claims against total redemptions / profits extracted out by Registered Shareholders in the US and BVI and possibly elsewhere.

3.3.3       To date, 167 claims have been filed in the BVI (9 further claims brought against one defendant have been discontinued as a result of a tolling agreement entered into to enable settlement discussions to be progressed) and 121 claims have been filed in the US (54 further claims have been filed and have subsequently been discontinued without prejudice).  As additional analysis work is completed by the Liquidators it is anticipated that further claims will be filed in the coming months.

3.3.4       As a result of the claims filed, the Liquidators are now in negotiation with a number of the defendants in these claims with regard to reaching, where possible, informal settlements.

3.3.5       As a matter of context, the table below set outs the total value of the redemptions and fictitious profits redeemed from the Companies' since 1 January 2003.

| Fund | Currency | Fictitious Profits | Redemptions Since 1 January 2003 | Profits on Redemptions Since 1 January 2003 |
|---|---|---|---|---|
| Lambda | Swiss Franc (CHF) | 16,890,884 | 31,589,967 | 9,335,172 |
| Sigma | Euro (€) | 2,035,811,801 | 4,932,989,115 | 1,395,729,163 |
| Sentry | US Dollar ($) | 54,882,742 | 275,211,281 | 45,238,480 |

3.4         PriceWaterhouseCoopers ("PWC")

3.4.1       As you will be aware, PWC were appointed as auditors to the companies prior the discovery of the Madoff fraud.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

3.4.2    The Liquidators' investigation into the companies' is continuing and in order to preserve any rights of action which the Liquidators may have against PWC, they entered into tolling agreements with PWC Netherlands and PWC Ontario.

3.4.3    The Liquidators' have had preliminary discussions with PWC regarding a possible settlement of the companies' claims against it.  These discussions are ongoing and no resolution has yet been reached.  It is inappropriate for me to provide any further commentary on this matter for reasons of confidentiality, however if and when acceptable settlement terms are reached the Liquidators will be required to obtain sanction from the Court, prior to entering into any settlement.

3.5      <u>Citco and the independent directors</u>

3.5.1    The two independent directors of the companies, Messrs. Jan Naess and Peter Schmid have continued to assist the Liquidators' in their duties and have attended several further meetings with them since the date of the last report.  In addition, at the request of the directors, the Liquidators have also entered into tolling agreements with them.

3.5.2    Citco provided brokerage, custodian and administration services to the companies.  Citco has continued to provide requested company documentation to the Liquidators.  Although the production of these records has not to date been on an expedited basis, as the Liquidators would have anticipated, additional documentation continues to be provided by Citco on a near daily basis, although not in the volumes required.

3.5.3    Obtaining this documentation from Citco has proved to be a time consuming matter for both the Liquidators and their US counsel.

3.5.4    The Liquidators have also entered into a tolling agreement with Citco to preserve any rights of action which they may potentially have against Citco.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

---

3.6       Pursuing remedies and powers available under Chapter 15 recognition

3.6.1     The granting of the Chapter 15 recognition by the US Bankruptcy Court equips the Liquidators with significant powers to recover US-based assets and undertake investigations in the US into the companies' affairs

3.6.2     One of the significant powers is the ability to seek formal Discovery in accordance with Rule 2004 of the US Bankruptcy Code. The process of seeking of Discovery is in hand and the Liquidators will be seeking leave to serve discovery demands against certain former service providers and redeeming shareholders imminently.

3.6.3     The Liquidators also have the right to move existing US litigation from state court to US Bankruptcy Court. There are several benefits to the estate in doing so, but the Liquidators are advised that the main benefit is that these matters will now be heard ultimately by the same Judge (Judge Burton Lifland) who is handling the Chapter 15 cases. This will ensure that the matters are prosecuted in an efficient and economic manner in one court, and the Judge will be able to adjudicate those matters with an understanding of the broader objectives of the Funds' liquidations.

3.6.4     Generally, matters being dealt with by the US Bankruptcy Court will be determined more quickly than in state court, as the state has a higher volume of cases to determine. Certain defendants in the litigation actions removed to Bankruptcy Court have filed motions to remand those matters back to state court, primarily on the ground that the Bankruptcy Court lacks appropriate jurisdiction to hear them. The Liquidators, through Brown Rudnick, will be responding to those motions in due course.

3.6.5     The Liquidators have also filed a motion seeking to have the two-year toll of statutes of limitation under the US Bankruptcy Code apply to the Chapter 15 cases. A hearing on this motion has been scheduled for 26 October 2010.

13

---

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

3.7        Discussions and Negotiations with the SIPA Trustee

3.7.1      As indicated in the Second Interim Report, the Liquidators identified upon their appointment that
           one of the more important issues that they faced was the position of (and in particular the litigation
           involving) the SIPA Trustee.  As background, on or about May 18, 2009, the SIPA Trustee filed an
           adversary proceeding in New York against Sentry and other entities asserting that Sentry was
           liable to the BLMIS estate, pursuant to the Bankruptcy Code, for the cash amounts it received
           within the 90 day (the "SIPA Trustee's Preference Claim") and 2 year periods (the "SIPA Trustee's
           2-Year Fraudulent Conveyance Claim") before the Filing Date and, pursuant to the New York
           Uniform Fraudulent Conveyance Act, for the cash amounts it received within the 6 years before the
           Filing Date (the "SIPA Trustee's 6-Year Fraudulent Conveyance Claims").  Further details of the
           Trustee's claims and assertions were provided in the Second Interim Report.

3.7.2      The Companies have also asserted claims in the BLMIS bankruptcy pursuant to the Securities
           Investor Protection Act.  Sentry has filed a claim for $6,284,321,581, Sigma has filed a claim for
           $773,635,188 and Lambda has filed a claim for $36,000,000.

3.7.3      Sigma and Lambda received notification from the SIPA Trustee on December 8, 2009 that their
           claims have been denied in the BLMIS liquidation proceedings due to them being classified as
           indirect investors which, in the determination of the SIPA Trustee, does not qualify either Sigma or
           Lambda as a "Customer" under the SIPA statute.  The Liquidators have made a timely objection to
           and challenged the SIPA Trustee's decision.  This matter is subject to appeal and a decision is
           anticipated in the early part of 2011.

3.7.4      The Liquidators conducted a comprehensive legal and economic analysis in order to assess
           whether entering into negotiations with the SIPA Trustee was economically beneficial for the
           estates and, if so, what terms or conditions should form the framework for the discussions.   The

14

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

Liquidators concluded that a settlement with the SIPA Trustee should be pursued.  Details of the Liquidators' analysis was provided in the Second Interim Report.

3.7.5    The specific terms of any agreement are still being negotiated and are accordingly subject to change prior to any conclusion.  Once the specific terms of the settlement have been agreed, the Liquidators expect that they will convene a meeting of the Companies' investors and creditors to present and explain the advantages and disadvantages of entering into the agreement, before seeking the Court's formal approval.  The detail of the agreement itself will not be fully disclosed for reasons of confidentiality.  However, investors and creditors will be given an opportunity to make representations to the Court upon the matter if they consider it appropriate to do so, to which the Court will pay appropriate regard before making its decision.

3.8      Potential Sale of the SIPA Claim

3.8.1    As you will be aware, all three Companies submitted SIPA claims into the estate of Bernard L Madoff Investment Securities LLC ("BLMIS").  The claims of Sigma and Lambda have been formally rejected by the US Trustee, as they were indirect customers of BLMIS.  The claim made by Sentry, which amounts to approximately $1.2 billion on a net equity basis has neither been admitted nor rejected by the SIPA Trustee.  The Liquidators' understand that the SIPA Trustee will not make any formal decision until such time as a settlement agreement has been reached between him and the Liquidators.

3.8.2    During the last 4-6 months a market has developed for the sale of SIPA claims in BLMIS. Investors are taking assignments of the claims, in consideration for an upfront percentage payment of the claim, speculating that distribution which will be paid by the SIPA Trustee will exceed the amount paid in consideration for the assignment of the SIPA claim.

15

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

3.8.3    The Sentry SIPA claim is understood to be by far the largest claim received by the SIPA Trustee. As such, it has generated a significant interest from the developing claims market.

3.8.4    The Liquidators consider that it is proper that they explore the possibilities of selling Sentry's claim and they have received a number of offers from prospective purchasers.  These offers are currently subject to consideration by the Liquidators however, no decision has been made in terms of whether or not a sale will be pursued.

3.8.5    Should the Liquidators determine that they believe that a sale of the SIPA claim is in the best interests of the creditors and investors of Sentry, then it is anticipated that a meeting will be convened to consider the proposed sale and garner the consensus of opinion of the meeting. However, the Liquidators' will make the final decision, although any sale would ultimately need to be sanctioned by the Court in BVI, and possibly the US Bankruptcy Court as well.

3.9      Seeking recognition in the Republic of Ireland

3.9.1    Prior to the commencement of the liquidations, two registered shareholders who had outstanding redemption requests obtained orders similar to freezing orders from a foreign Court against Sentry's bank account held with Citco Bank (Nederlands) N.V. (Dublin branch).  The current value of the funds attached by means of these orders amounts to approximately $71.13 million.  The purpose of the orders is to try to earmark the funds attached for the benefit of those investors should they be succeed in legal proceedings brought against Fairfield.

3.9.2    As indicated in the Second Interim Report, the Liquidators had entered into advanced settlement discussions with the two registered shareholders.  An understanding was reached in principle and the necessary sanction of the BVI court obtained, for a settlement whereby Sentry would agree to make a contribution towards the legal fees of the two registered shareholders in consideration for the lifting of the Dutch attachments over the funds.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

3.9.3   However, one of the registered shareholders changed its position and on 24 March 2010 issued a writ and summons in the Netherlands against Sentry and the Liquidators for return of their investment (plus interest), attorney's fees and costs.

3.9.4   Unfortunately, the actions taken by the registered shareholder also affected the Liquidators' position in relation to the other shareholder as for reasons of practicality both Dutch attachments must be resolved collectively.

3.9.5   The Liquidators also obtained advice from their leading English counsel and counsel in Ireland regarding the recognition of their appointment in the Republic of Ireland.  The funds which are subject to the Dutch court's freezing order are held in Ireland.  Having considered the advice given, the Liquidators have now initiated proceedings for recognition of their appointment  and the release of the attached funds in Ireland.  It is anticipated that the matter will be heard before the end of the year.  Both of the shareholders who obtained attachment orders are trying to arrest the Liquidators' attempts to have the funds released by challenging the ability of the Irish court to hear those claims in view of the prior Dutch proceedings (a challenge to jurisdiction).

3.10    BVI Court applications and communication with the Liquidation Committee

3.10.1  The terms of the Liquidators' appointment are such that they are obliged to seek approval from the BVI Court in respect of the commencement, continuance or defence of any legal action.  As a result, each "small" step requires the Liquidators' to make an application to Court, even for matters such as appearing at purely procedural hearings.

3.10.2  As a result, the Liquidators, through their BVI counsel, Forbes Hare, have made a very large number of applications during the last six months to the BVI Court.

3.10.3  The ad-hoc liquidation Committee (appointed in respect of Sentry only), has a monthly telephone meeting with the Liquidators and their US and BVI counsel.  On a quarterly basis, by mutual

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

agreement, the Liquidators also have a more substantial in-person meeting with the Committee. The last in-person meeting was held at the end of August 2010, and the next one is tentatively scheduled for November 2010.

3.10.4    The Liquidators have, since the last report, agreed the terms of a protocol with Committee which sets out what information the Liquidators will provide the Committee with and when.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

---

## 4 Financial Analysis

4.1    A comparative analysis of the Companies' financial position as at 21 July 2009 as compared to the

estimated asset position as at 30 September 2010 follows.  Please note that Lambda's sole asset

was and remains its investment in Sentry, and therefore Lambda is not included in the summary.

| Assets | Sentry | | |
|---|---|---|---|
| | Position as at 21-Jul-09 | Position as at 28-Sep-10 | Variance |
| Cash | $71,126,716 [1] | $182,352,631 | [a] $111,225,915 |
| Other assets<br>- non-BMIS investments*** | $79,506,337 | $75,972,981 | [c] ($3,533,356) |
| - promissory note | Nil | Nil | Nil |
| - fee deferral assets | $21,000,000 | $13,591,293 | [d] ($7,408,707) |
| Total | $171,633,053 | $271,916,905 | $100,283,852 |

| Assets | Sigma | | |
|---|---|---|---|
| | Position as at 21-Jul-09 | Position as at 30-Sep-10 | Variance |
| Cash | Nil<br><br>Nil | $59,370,469<br><br>EUR 185,997 | [e] $62,699,855<br><br>EUR 185,997 |
| Cash held in Citco | $62,411,835<br>EUR 185,873 | $3,329,387 | [f] ($62,411,835)<br>[g] EUR (185,873) |
| Other assets<br>- non-BMIS investments | Nil | Nil | Nil |
| - promissory note | EUR 80,000 | EUR 80,000 | Nil |
| - fee deferral assets | Nil | Nil | Nil |
| Total | $62,411,835<br>EUR 265,873 | $62,699,855<br>EUR 265,997 | $288,020<br>EUR 124 |

---

[1] On 16 March 2010 Shell placed a new attachment against Sentry's funds.  At that time Sentry's account
showed a credit balance of US$ 71,126,716.22.

PRIVILEGED AND CONFIDENTIAL

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

4.2     The total estimated value of the assets of Sentry has increased by $24,310,871 and the total estimated value of the assets of Sigma has increased by $288,020.   These variances can be explained as follows:

[a]     Net amount held in the Escrow Account made up of $11,500,000 transferred from the frozen account (being the balance over and above $71,126,716, the amount secured by the freezing order).  Originally the funds derived from redemption monies.

[b]     Additional redemption monies received since the commencement of the liquidation.

[c]     Investments of $19,726,515 have been redeemed and received as cash.  The value of the remaining stock has therefore increased.

[d]     The original amount of $21,000,000 was an estimate and following updated information received from Citco the current value of $13,591,293 is a more accurate valuation. Additionally, some of the deferred fee assets have been redeemed and received as cash.

[e]     This balance comprises of additional funds received from Conyers Dill & Pearman in respect of a net retainer held by them and transfers from Citco of $62,672,058 to the Brown Rudnick Escrow Account referred to above.

[f]     Account balance held by Citco was transferred to the Brown Rudnick Escrow Account.

[g]     Account balance held by Citco was transferred to a Brown Rudnick Euro Escrow Account.

4.3.1   As reported previously, Sigma had cash at bank of approximately $62.4 million and EUR 185,000 at the commencement of the liquidation.  At that time, Citco, in its capacity as Custodian was unwilling to release those funds to the control of the Liquidators due to a purported proprietary claim made over them by the SIPA Trustee.  Following negotiations with the SIPA Trustee, the funds have been transferred to an escrow account as previously indicated.  In due course, either

20

Fairfield Companies
3rd Interim Report of the Liquidators
30 September 2010

Liquidator


30 September 2010

PRIVILEGED AND CONFIDENTIAL

**Fairfield Companies**
3rd Interim Report of the Liquidators
30 September 2010

when the proposed settlement agreement with the SIPA Trustee is executed or before then, it is contemplated that these funds will be transferred into the Liquidators' account.

## 5      Conclusion

5.1     The Liquidators intend periodically to provide further reports to the Court, creditors and investors, updating them on the progress of the liquidations as and when appropriate or as directed by the Court. As discussed in this Report, the Liquidators will be contacting the Companies' investors and creditors once the terms of any settlement with the US Trustee have been finalised and providing details of a meeting to discuss the proposed settlement.

5.2     The next interim consolidated report is scheduled to be issued in March 2011. In the meantime, however, registered shareholders are advised to keep a regular check upon the secure website for further updates.

5.3     In addition, a combined meeting of the companies' creditors and registered shareholders has been convened to be held at the offices of Brown Rudnick in London on 22 October 2010 at 2.00pm (UK). The purpose of the meeting is to provide an update upon the administration of the Liquidations to date, and to enable the stakeholders to discuss the matters with the Liquidators and raise any queries or concerns which they may have. Any person requiring further information on this meeting is kindly requested to email fairfieldsentry@krysandassoc.com; fairfieldsigma@krysandassoc.com or fairfieldlambda@krysandassoc.com (as appropriate) for further information. Notice of these meetings will be circulated by email and uploaded to the secure extranet sites.

Kenneth Krys
Liquidator
30 September 2010

21

**Fairfield Funds Liquidation**                                                      Appendix A
**Liquidators' cash receipts and disbursements statement**
**July 2009 to September 2010**

| | USD $ SENTRY 28-Sep-10 | USD $ SIGMA 28-Sep-10 | USD $ LAMBDA 28-Sep-10 | TOTAL 28-Sep-10 |
|---|---|---|---|---|
| **Cash Receipts** | | | | |
| Citco at Liquidation Date | 70,099,115 | 62,672,058 | - | 132,771,173 |
| Proceeds on liquidation of positions | 48,577,706 | 316,952 | - | 48,894,658 |
| Interest received | 15,910 | 65,611 | - | 81,521 |
| | 118,692,731 | 63,054,621 | - | 181,747,352 |
| | | | | |
| **Cash Disbursements** | | | | |
| Legal fees and expenses | 4,091,839 | 18,504 | 7,003 | 4,117,345 |
| Liquidators fees and expenses | 3,075,270 | 132,952 | 18,117 | 3,226,339 |
| Other professional fees | 90,422 | 24,116 | 2,790 | 117,328 |
| Consulting fees & expenses | - | 3,472 | - | 3,472 |
| Database & Web Fees | 27,405 | 2,830 | 327 | 30,561 |
| Liquidation Committee expenses | 97,475 | - | - | 97,475 |
| Other travel expenses | 10,827 | - | - | 10,827 |
| Application Costs and fees | 185,667 | - | - | 185,667 |
| Office Rental expenses | - | 5,600 | - | 5,600 |
| Other | 4,141 | 4,141 | - | 8,282 |
| Bank charges | 1,659 | 797 | 126 | 2,582 |
| | 7,584,704 | 192,412 | 28,362 | 7,805,479 |
| | | | | |
| **Net Cash Position:** | 111,108,026 | 62,862,209 | (28,362) | 173,941,873 |
| | | | | |
| **Closing Balance made up of:** | | | | |
| | | | | |
| Citco | 71,172,866 | - | - | 71,172,866 |
| VP Bank | - | 329,387 | - | 329,387 |
| Clydesdale | 23,006,899 | 59,370,469 | (28,362) | 82,349,005 |
| Scotia Bank | 17,000,000 | 3,000,000 | - | 20,000,000 |
| $ | 111,179,765 | 62,699,855 | (28,362) | 173,851,258 |

**Notes**

1. Sentry funds of $71,126,716 with Citco are subject to a freezing order

2. Funds held at Clydesdale are held in a Brown Rudnick escrow account

3. The Office Rental expenses will in due course be allocated equally between Sentry and Sigma

4. Fees and expenses include only those approved by the BVI court. Last fee application was approved on 15 July 2010.

Insolvency Act 2003
Proxy

<u>Notes to help completion of the form</u>

**FAIRFIELD SENTRY LIMITED, FAIRFIELD SIGMA LIMITED & FAIRFIELD LAMBDA LIMITED (ALL IN LIQUIDATION)**

Please give full name and address for communication

Name of *Creditor /* Registered Shareholder_____

* Delete as application
** to be completed by Registered Shareholders only – Proxy forms without this information will be returned

Address
_____

**Account and Holder ID Numbers:_____

Please insert name(s) of person(s) (who must be 18 or over).

Name(s) of proxy-
holder(s)_____

If you advise that your attendee(s) will be attending by telephone we will email / fax you call-in details ahead of the meeting to enable you to participate

The attendee will be present *in person or *by telephone

*We / *I appoint the above person(s) to be my/the* creditor's / Registered Shareholders' proxy-holder at the meeting of creditors to be held on **22 October 2010** or at any adjournment of that meeting.

This form must be signed

Signature _____

Date _____

Name in CAPITAL LETTERS _____

Position with *creditor / *registered shareholder or relationship to *creditor / *registered shareholder

or other authority for signature

_____